**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

POORYA ASAD POOR DEZEKI,

     Petitioner,

v.                                     No. 1:26-cv-02229-MLG-JHR

WARDEN, Torrance County Detention
Center, et al.,

     Respondents.

**ORDER GRANTING VOLUNTARY DISMISSAL OF PETITION FOR WRIT OF
HABEAS CORPUS AND DENYING MOTION FOR AN EX PARTE
TEMPORARY RESTRAINING ORDER AS MOOT**[1]

Poorya Asad Poor Dezeki entered the United States on January 19, 2025, to seek asylum from his native Iran on account of political and religious persecution and membership in a particular social group: "individuals who protest against the Iranian regime." Doc. 1 at 1, 3 ¶¶ 1, 14-15; *see also* Doc. 6 at 1-2. On May 6, 2025, an immigration judge denied his asylum application and placed him in removal proceedings pursuant to 8 U.S.C. § 1229(a). *See* Doc. 1 at 3-4 ¶¶ 16-18; Doc. 6 at 1-2. Although he was granted a withholding of removal after establishing "that it was more likely than not that he would suffer persecution on account of a protected characteristic if removed to Iran[,]" his final removal order rendered him subject to the Immigration and Nationality Act's ("INA") 90-day period of mandatory post-final-removal-order detention as set

---

[1] Poor Dezeki filed a Motion for an Ex Parte Temporary Restraining Order, Doc. 2, "enjoining Respondents from transferring Petitioner outside of the jurisdiction of this Court while his habeas corpus matter is pending." *Id.* at 3. This request was mooted by the Court's Order enjoining Respondents from transferring Poor Dezeki outside of the District pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See* Doc. 4.

1

forth at § 1231. Doc. 1 at 4-5 ¶¶ 18, 22; *see also* Doc. 6 at 1-2. Consequently, he was placed in federal immigration custody. *See* Doc. 1 at 2 ¶¶ 2-3; Doc. 6 at 2.

On June 30, 2026, Poor Dezeki was relocated to Torrance County Detention Center; ten days later, he filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging the lawfulness of his prolonged detention—431 days at the time of filing—notwithstanding an insignificant likelihood of removal within the reasonably foreseeable future.[2] *See id.* at 1-2, 8-9 ¶¶ 1-2, 30-33 ("The 180-day period of reasonableness for continued detention has closed in Petitioner's case . . . and the Government has failed to procure necessary travel documents [so] . . . removal is not significantly likely in the foreseeable future."); *id.* at 5 ¶ 20 ("To the extent that an individual's removal is unforeseeable, their detention becomes unconnected to the government's interest, and thus, unlawful." (citing *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001))). As a remedy, Poor Dezeki requested that the Court: (1) enjoin Respondents from transferring him outside of the U.S. District of New Mexico during the pendency of his habeas case; (2) "[d]eclare that, in line with *East Bay Sanctuary Covenant v. Trump*, [his asylum] case must be reconsidered[;]" and (3) order his immediate release from federal immigration custody. *See id.* at 12 (citing No. 18-cv-06810-JST, 2026 WL 1256873 (N.D. Cal. May 7, 2026)); *see also id.* (asking the Court for related declaratory and injunctive relief). The Court required Respondents to show cause within ten days of receiving the Order why the Petition should not be granted and enjoined Poor Dezeki's transfer outside the District pending his habeas proceedings. *See* Doc. 4.

On July 24, 2026, Respondents answered the Court's Order to Show Cause conceding that it "cannot supply this Court with a factual record establishing a basis for Petitioner's ongoing

---

[2] His Petition informed the Court that he was simultaneously seeking reconsideration of his asylum decision in immigration court. See Doc. 1 ¶ 1.

detention under *Zadvydas*'s interpretation of 28 U.S.C. § 1231(a)(6) [sic]." Doc. 6 at 4. Respondents also noted that to the extent that Poor Dezeki's Petition argues that his asylum application should be reconsidered, that matter is not properly before this Court. *See id.* at 5 ("Petitioner does not explain how this Court has the authority to directly overturn an immigration court's ruling on an asylum claim, especially given recent Supreme Court jurisprudence reaffirming the limits of Article III courts to usurp the authority of the Secretary of Homeland Security . . . to make immigration decisions." (citing *Mullin v. Doe*, 146 S. Ct. 2121 (2025))).

On July 30, 2026, Poor Dezeki filed a motion[3] for voluntary dismissal without prejudice of his Petition. Doc. 9. The Court, without reaching the legal merits—but having considered the motion for voluntary dismissal and being otherwise fully informed—finds that the motion is well-taken and is therefore granted. *See id.* at 1 (informing the Court that his asylum application has been granted upon reconsideration by the immigration court, effectively defeating the underlying basis for his detention (and thus, his Petition)).

Final judgment will be entered contemporaneously pursuant to Federal Rule of Civil Procedure 58(a).

It is so ordered.

_____

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

[3] Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff may voluntarily dismiss a defendant without a court order only if the notice of dismissal is: (1) entered "before the opposing party serves either an answer or a motion for summary judgment;" or (2) stipulated "by all parties who have appeared." This voluntary dismissal follows an answer from the Government and is not stipulated to by the Office of the United States Attorney for the District of New Mexico ("USAO"), either. *See* Docs. 6, 9. For this reason, the Court interprets the stipulation not as a Rule 41(a)(1)(A) notice but as a Rule 41(a)(2) motion for voluntary dismissal that requires a Court order.